UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————— x
KENNETH GORDON, Individually and on : Civil Action No. 1:18-cv-01831-ER
Behalf of All Others Similarly Situated, :
:
: CLASS ACTION
Plaintiff, :
:
: MEMORANDUM OF LAW IN SUPPORT
vs. : OF MOTION FOR APPOINTMENT AS
: LEAD PLAINTIFF AND APPROVAL OF
MIMEDX GROUP, INC., PARKER H. PETIT : LEAD PLAINTIFF'S SELECTION OF
and MICHAEL J. SENKEN, : LEAD COUNSEL
:
Defendants. :
:
—————————————————— x

## I.    INTRODUCTION

This case is a putative securities class action on behalf of purchasers of MiMedx Group, Inc.

("MiMedx" or the "Company") securities during the March 7, 2013 through February 21, 2018 Class

Period against defendants for purported violations of the Securities Exchange Act of 1934 (the "1934

Act").[1]  The Private Securities Litigation Reform Act of 1995 ("PSLRA"), which governs this

action, provides that "[n]ot later than 90 days after the date on which a notice is published," the

"court shall consider any motion made by a purported class member in response to the notice" and

"shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court

determines to be most capable of adequately representing the interests of class members." 15 U.S.C.

§78u-4(a)(3)(B)(i).

The Pension Fund respectfully submits that it is the presumptively most adequate plaintiff in

this case because it has filed a timely Motion in response to a notice, has the largest financial interest

in the outcome of this litigation, and will typically and adequately represent the putative class's

interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Fund's selection of Robbins

Geller Rudman & Dowd LLP as lead counsel for the putative class is reasonable and should be

approved.  15 U.S.C. §78u-4(a)(3)(B)(v).

---

[1]    There are two virtually identical cases also pending in the Northern District of Georgia where the Company is based: *MacPhee v. MiMedx Group, Inc.*, No. 1:18-cv-00830 (N.D. Ga. Feb. 23, 2018) and *Kline v. MiMedx Group, Inc.*, No. 1:18-cv-00859 (N.D. Ga. Feb. 26, 2018).  The Carpenters Pension Fund of Illinois (the "Pension Fund") is also filing a consolidation and lead plaintiff motion in these cases.  The claims and defendants are identical in all three actions.  However, the *MacPhee* class period ends on February 19, 2018 and the *Kline* class period ends on February 20, 2018.  The Pension Fund's transactions are the same regardless of when the class period ends.

## II.      FACTUAL BACKGROUND

MiMedx is a biopharmaceutical company that focuses on biomaterials for soft tissue repair, such as tendons, ligaments, and cartilage, as well as other biomaterial-based products for other medical applications.  MiMedx utilizes a number of different distributors to deliver its products, including AvKARE, Inc., a federal contractor.  The revenue derived from MiMedx's distribution agreement with AvKARE makes up a significant portion of the Company's total revenue.

The complaint alleges that defendants made materially false and misleading statements and/or failed to disclose adverse information regarding the Company's business and operations.  Specifically, during the Class Period, defendants concealed that MiMedx had been engaged in a "channel-stuffing" scheme designed to inappropriately recognize revenue that had not yet been realized and failed to disclose the Company's financial ties to physicians as required by the Physician Payments Sunshine Act.  As a result of these false statements and/or omissions, MiMedx securities traded at artificially inflated prices during the Class Period, with its stock price reaching a high of $17.96 per share.

In December 2016, two former MiMedx employees filed a complaint against the Company alleging, among other things, retaliatory termination by MiMedx after they had reported fraudulent revenue recognition practices (the "Whistleblower Action").  In particular, the employees alleged that MiMedx had engaged in a "channel-stuffing scheme" to "fraudulently recognize revenue [purportedly earned under its distribution agreement with AvKARE] in its certified financial statements before the revenue had been realized or realizable and earned."  ECF No. 1 at ¶63.  The Company denied the claims and sued the employees for tortious interference, among other things.

In September 2017, several market research analysts published reports that focused on the allegedly fraudulent revenue recognition practices of MiMedx alleged in the Whistleblower Action.

- 2 -

Again, MiMedx denied these allegations and sued each of the research companies for libel, slander, and defamation.

On February 20, 2018, MiMedx announced that its audit committee "ha[d] engaged independent legal and accounting advisors to conduct an internal investigation into current and prior-period matters relat[ed] to allegations regarding certain sales and distribution practices at the Company." ECF No. 1 at ¶7. MiMedx advised investors that "Company executives are also reviewing, among other items, the accounting treatment of certain distributor contracts." *Id.* The Company further announced that, because of this internal investigation, it would delay the release of its fourth quarter and fiscal year 2017 financial results. On this news, the price of MiMedx shares fell nearly 40% to close at $8.75 per share on February 20, 2018.

Then, on February 22, 2018, *The Wall Street Journal* reported that MiMedx "has financial ties to more than 20 doctors . . . but the company hasn't reported these payments to the government under a 2013 law" that requires drug and medical-device makers to disclose payments or gifts they make annually to doctors and teaching hospitals. ECF No. 1 at ¶9. According to *The Wall Street Journal*, a company that knowingly fails to report doctor or hospital payments can face a maximum penalty of $1 million a year. Following publication of this article, the price of MiMedx shares fell another 13% over the next two trading sessions, to close at $7.83 per share on February 23, 2018.

On February 26, 2018, it was revealed that the U.S. Department of Justice is investigating whether MiMedx overcharged the government for its tissue repair products, as well as into the Company's distribution practices, which news caused the stock price to decline another 16%.

As a result of defendants' allegedly wrongful acts and omissions and the decline in MiMedx stock value, class members have suffered significant losses and damages.

III.    ARGUMENT

A.    The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private

action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal

Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).  First,

"[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely

circulated national business-oriented publication or wire service" advising members of the purported

plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class

period" and that "not later than 60 days after the date on which the notice is published, any member

of the purported class may move the court to serve as lead plaintiff."  15 U.S.C. §78u-4(a)(3)(A)(i).

The statutory notice in this case was published on February 24, 2018.  *See* Declaration of David A.

Rosenfeld in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's

Selection of Lead Counsel ("Rosenfeld Decl."), Ex. A.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate

plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief
> sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil
> Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The Pension Fund meets these requirements and should be

appointed Lead Plaintiff.

1.    The Pension Fund's Motion Is Timely

The February 24, 2018, statutory notice published in this case advised purported class

members of the pendency of the action, the claims asserted, the proposed class period, and the right

- 4 -

to move the Court to be appointed as lead plaintiff within 60 days, or by April 25, 2018.  *See*

Rosenfeld Decl., Ex. A.  Because the Pension Fund's Motion has been filed by the statutory

deadline, the Pension Fund is eligible for appointment as lead plaintiff.

### 2.    The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification, the Pension Fund expended more than $1.1 million

purchasing 80,280 shares of MiMedx stock during the Class Period at artificially inflated prices and

suffered harm of approximately $385,500 as the price of MiMedx stock declined.  *See* Rosenfeld

Decl., Exs. B, C.[2]  To the best of the Pension Fund's counsel's knowledge, there are no other

plaintiffs with a larger financial interest.  Therefore, the Pension Fund satisfies the PSLRA's

prerequisite of having the largest financial interest.

### 3.    The Pension Fund Is Typical and Adequate of the Purported Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise

satisf[y] the requirements of Rule 23."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  "'When deciding

competing motions to be appointed lead plaintiff under the PSLRA, however, a court need not

conduct a full analysis of whether the requirements of Rule 23 have been met.'" *Villella v. Chem. &*

*Mining Co. of Chile Inc*., 2015 WL 6029950, at *6 (S.D.N.Y. Oct. 14, 2015) (citation omitted).

"'Rather, "[a]t this stage of the litigation, a moving plaintiff must only make a preliminary showing

that the adequacy and typicality requirements have been met."'" *Id.* (citation omitted).

"'The typicality requirement is satisfied when the class members' claims "arise . . . from the

same course of events, and each class member makes similar legal arguments to prove the

---

[2]    The Pension Fund's loss is the same regardless of whether the first in, first out or last in, first out accounting method is used.

defendant's liability."'" *Id.* (citation omitted).  Here, the Pension Fund purchased MiMedx stock during the Class Period in reliance on defendants' allegedly materially false and misleading statements and omissions and suffered damages resulting from the artificially inflated price of MiMedx stock.

"'The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."'" *Id.* (citation omitted).  The Pension Fund has retained Robbins Geller as counsel, a law firm with vast experience prosecuting securities class actions.  *See* Rosenfeld Decl., Ex. D.  As an institutional investor with prior experience serving as lead plaintiff, the Pension Fund is well-suited to serve as lead plaintiff in this case.  In addition, the Pension Fund is not aware of any conflict between it and the putative class members.  Finally, the Pension Fund's substantial loss provides the requisite interest to ensure vigorous advocacy.

Because the Pension Fund filed a timely motion, has a large financial interest in the relief sought by the class, and is typical and adequate of the putative class, the Court should adopt the presumption that it is the presumptive lead plaintiff.

### B.     The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The Pension Fund has selected Robbins Geller to serve as lead counsel in this case.

Robbins Geller, a 200-attorney firm with offices nationwide and in this District, regularly practices complex securities litigation.  *See* Rosenfeld Decl., Ex. D.  District courts throughout the country, including this Court, have recognized Robbins Geller's experience in litigating complex

- 6 -

securities class actions and appointed Robbins Geller attorneys to lead roles in complex class action securities cases such as this. *See, e.g.*, *Villella*, 2015 WL 6029950, at *8 ("the Court, like many others in this Circuit before it, concludes that Robbins Geller 'is experienced in securities class action litigation and qualified to conduct this lawsuit'" and approving institutional investors selection of Robbins Geller as lead counsel in securities case) (citation omitted).

Based upon Robbins Geller's extensive experience and proven track record as counsel in securities class actions, the Pension Fund's selection of Robbins Geller as lead counsel is reasonable and should be approved.

## IV.    CONCLUSION

The Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, the Pension Fund respectfully requests that the Court grant its Motion.

DATED: April 25, 2018                    Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD


                                               s/ David A. Rosenfeld
                                         DAVID A. ROSENFELD

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         drosenfeld@rgrdlaw.com

- 7 -

1420473_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlw.com

[Proposed] Lead Counsel for Plaintiff

CAVANAGH & O'HARA
JOHN T. LONG
2319 West Jefferson Street
Springfield, IL  62702
Telephone:  217/544-1771
217/544-9894 (fax)

Additional Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on April 25, 2018.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

1420473_1

# Mailing Information for a Case 1:18-cv-01831-ER Gordon v. Mimedx Group, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

John Murphy
,