**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENNETH GORDON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MIMEDX GROUP, INC., PARKER H. PETIT, and MICHAEL J. SENKEN,<br><br>Defendants. | Case No. 1:18-cv-01831-ER<br><br>Hon. Edgardo Ramos<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE MUNICIPAL EMPLOYEES' RETIREMENT SYSTEM OF MICHIGAN FOR APPOINTMENT AS <u>LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL</u>**

**Table of Contents**

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. STATEMENT OF FACTS .................................................................................................... 2

III. ARGUMENT ......................................................................................................................... 4

    A. MERS SHOULD BE APPOINTED TO SERVE AS LEAD PLAINTIFF ............ 4

        1. MERS Has Met the Procedural Requirements of the PSLRA .................... 5

        2. MERS Has the Largest Financial Interest ...................................................... 5

        3. MERS Satisfies the Requirements of Federal Rule 23 ............................... 6

            a) MERS' Claims Are Typical of the Class ........................................ 6

            b) MERS Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ............................... 7

    B. MERS' SELECTION OF LEAD COUNSEL SHOULD BE APPROVED ........... 9

IV. CONCLUSION .................................................................................................................... 11

## Table of Authorities

**Cases**

*Bo Young Cha v. Kinross Gold Corp.*,
    No. 12 Civ. 1203(PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012) .................................. 7

*Clark v. Barrick Gold Corp.*,
    No. 13 CIV 3851(RPP), 2013 WL 5300698 (S.D.N.Y. Sept. 20, 2013) .................................. 6

*Glauser v. EVCI Career Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................................... 5

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................................................. 8, 9

*In re Herley Ind. Inc.*, Sec. Lit.,
    No. 06-2596, 2010 WL 176869 (E.D. Pa. Jan. 15, 2010) .................................................... 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................... 6

*Lipetz v. Wachovia Corp.*,
    No. 08 Civ. 6171(RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) ................................ 8

*Marsch v. Rui Feng*,
    No. 12 Civ. 9456(JSR), 2013 WL 3204193 (S.D.N.Y. June 13, 2013) ................................ 6

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v.
    Fairfax Fin. Holdings, Ltd.*,
    No. 11 Civ. 5097(JFK), 2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011) ................................ 7

*Plymouth County Retirement System v. Carter's Inc.*,
    No. 1:08-cv-2940-JOF 2009 WL 692141 (N.D. Ga. Mar. 13, 2009) ................................... 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008) ......................................................................... 5

**Statutes**

15 U.S.C. §78j(b) ........................................................................................................................ 1

15 U.S.C. §78t(a) ........................................................................................................................ 1

15 U.S.C. §78u-4(a)(3)(A)(i) .................................................................................................. 4, 5

15 U.S.C. §78u-4(a)(3)(B)(i) ...................................................................................................... 4

15 U.S.C. §78u-4(a)(3)(B)(ii) ................................................................................................... 4

15 U.S.C. §78u-4(a)(3)(B)(iii) .................................................................................................. 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ........................................................................................... 1, 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ......................................................................................... 6

15 U.S.C. §78u-4(a)(3)(B)(v) .................................................................................................... 9

17 C.F.R. §240.10b-5 ................................................................................................................ 1

Fed. R. Civ. P. 23 ............................................................................................................. passim

**Other Authorities**

H.R. Rep. No. 104-369 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730 .............. 2, 9

The Municipal Employees' Retirement of Michigan ("MERS") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an order:  (1) appointing MERS as Lead Plaintiff; and (2) approving its selection of Berman Tabacco as Lead Counsel for the class.

## I. PRELIMINARY STATEMENT

This action was filed on March 1, 2018.[1]  The complaint alleges that between March 7, 2013 and February 21, 2018, both dates inclusive, (the "Class Period") MiMedx Group, Inc. ("MiMedx" or the "Company") and certain MiMedx senior executives defrauded investors who purchased or otherwise acquired MiMedx securities in violation of Sections 10(b) and 20(a) of the Exchange Act (Act (15 U.S.C. §§78j(b), 78t(a)), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  Defendants allegedly engaged in a "channel-stuffing" scheme designed to inappropriately recognize revenue that had not yet been realized and failed to disclose its financial ties to physicians and that it lacked adequate internal controls.  As a result, MiMedx shares traded at artificially inflated prices during the Class Period and class members, including MERS, suffered significant losses and damages.

Pursuant to the PSLRA, the court must appoint as lead plaintiff the movant who possesses the largest financial interest in the outcome of the action and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. §78u-

---

[1] Prior to the filing of this action, two related actions against the same defendants were filed in the United States District Court for the Northern District of Georgia: *MacPhee v. MiMedx Group, Inc., et al.*, Case No. 18-cv-00831-ELR (N.D. Ga.) (filed on February 23, 2018 with a class period between March 7, 2013 through February 19, 2018); *Kline v. MiMedx Group, Inc., et al.*, Case No. 18-cv-00859-ELR (N.D. Ga.) (filed on February 26, 2018, with a class period between March 7, 2013, and February 20, 2018).  MERS is concurrently filing a motion for appointment as lead plaintiff in these Georgia actions.

4(a)(3)(B)(iii)(I). MERS believes that it is the "most adequate plaintiff" as defined by the PSLRA and should be appointed Lead Plaintiff in this action. As set forth in more detail below, MERS has a significant financial interest in the relief sought in this action having sustained losses of approximately $218,762 by virtue of its purchases of MiMedx securities during the Class Period.

Moreover, in addition to asserting the largest financial interest in this litigation, MERS readily satisfies the relevant requirements of Rule 23 because its claims are typical of all other members of the class and it will fairly and adequately represent the class. Indeed, MERS, a sophisticated public pension fund with experience supervising the work of outside counsel, is precisely the sort of institutional investor that Congress envisioned would head up securities class actions when it enacted the PSLRA. *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). In addition, MERS has selected and retained Berman Tabacco, a law firm with significant experience in prosecuting securities fraud class actions, to serve as Lead Counsel for the class.

Accordingly, MERS respectfully requests that the Court appoint it to serve as Lead Plaintiff and approve its choice of Berman Tabacco as Lead Counsel.

**II.     STATEMENT OF FACTS**

MiMedx is a biopharmaceutical company that focuses on biomaterials for soft tissue repair, such as tendons, ligaments and cartilage, as well as other biomaterial-based products for other medical applications. Founded in 2008, the Company is based in Marietta, Georgia, and its stock trades on the NASDAQ Capital Market ("NASDAQ") under the ticker symbol "MDXG."

According to the complaint, MiMedx utilizes a number of different distributors to deliver its products. Among those distributors is AvKARE, Inc. ("AvKARE") – a federal contractor.

Through MiMedx's distribution agreement with AvKARE, the Company was able to order products directly to Department of Veterans Affairs ("VA") hospitals at will. The revenues derived from MiMedx's distribution agreement with AvKARE made up a significant portion of the Company's total revenue. In 2013, for example, 56% of the Company's total revenues were attributable to its agreement with AvKARE.

The complaint alleges that in December 2016, two former employees of MiMedx filed an action against the Company, alleging, among other things, retaliatory termination by MiMedx after reporting fraudulent revenue recognition practices (the "Whistleblower Action"). In particular, those employees alleged that MiMedx had engaged in a "channel-stuffing scheme" to "fraudulently recognize revenue [purportedly earned under its distribution agreement with AvKARE] in its certified financial statements before the revenue had been realized or realizable and earned." The Company denied those claims and, in fact, sued the employees for tortious interference, among other things.

On February 20, 2018, MiMedx issued a press release announcing that its audit committee "ha[d] engaged independent legal and accounting advisors to conduct an internal investigation into current and prior-period matters relating to allegations regarding certain sales and distribution practices at the Company." MiMedx advised investors that "Company executives are also reviewing, among other items, the accounting treatment of certain distributor contracts." The Company further announced that, because of this internal investigation, it would delay the release of its fourth quarter and fiscal year 2017 financial results. On this news, MiMedx's share price fell $5.72, or 39.53%, to close at $8.75 on February 20, 2018.

On February 22, 2018, the *Wall Street Journal* published an article entitled "MiMedx, Fast-Growing Developer of Tissue Graft Products, Didn't Report Payments to Doctors." The article

3

reported that MiMedx "has financial ties to more than 20 doctors . . . but the company hasn't reported these payments to the government under a 2013 law." Following publication of the *Wall Street Journal* article, MiMedx's share price fell $1.22, or 13.48%, over the next two trading sessions, closing at $7.83 on February 23, 2018.

The complaint alleges that throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants allegedly made false and/or misleading statements and/or failed to disclose that: (i) MiMedx engaged in a "channel-stuffing" scheme designed to inappropriately recognize revenue that had not yet been realized; (ii) MiMedx failed to disclose its financial ties to physicians, as required by federal law; (iii) the Company lacked adequate internal controls over financial reporting; and (iv) as a result of the foregoing, MiMedx shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

## III.   ARGUMENT

### A.   MERS SHOULD BE APPOINTED TO SERVE AS LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act and directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 60 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. §§78u-4(a)(3)(A)(i), (B)(i) & (B)(ii).

Further, the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. 15 U.S.C. §78u-4(a)(3)(B)(i). The Court shall appoint the presumptively most adequate plaintiff to serve as lead plaintiff and shall presume that plaintiff is the person, that: "(aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest

financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

MERS satisfies all three of these criteria, is entitled to the presumption that it is the most adequate plaintiff of the class and should be appointed Lead Plaintiff.

### 1. MERS Has Met the Procedural Requirements of the PSLRA

On February 24, 2018, a notice was published over *PRNewswire* pursuant to Section 21D(a)(3)(A)(i), 15 U.S.C. §78u-4(a)(3)(A)(i), of the PSLRA, which announced that a securities class action had been filed against the Defendants and advised investors of MiMedx securities that they had 60 days to file a motion to be appointed as Lead Plaintiff. *See* Declaration of Nicole Lavallee in Support of the Municipal Employees' Retirement of Michigan's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Lavallee Decl."), Ex. A.

MERS has filed the instant motion pursuant to the notice and has attached a Certification attesting that it is willing to serve as a class representative for the class and provide testimony at depositions and trial, if necessary. *See* Lavallee Decl., Ex. B. Accordingly, MERS has satisfied the first criteria to serve as Lead Plaintiff for the class.

### 2. MERS Has the Largest Financial Interest

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). During the Class Period, MERS lost $218,762 under both the first-in/first-out ("FIFO") as well as the last-in/first-out ("LIFO")

methodologies.[2]  *See* Lavallee Decl., Ex. C.  MERS is unaware of any other investor who intends to file a motion for appointment as Lead Plaintiff in this action that has suffered larger losses than MERS.  Accordingly, MERS believes that it has the largest financial interest in the relief sought by the proposed class and is the presumptive Lead Plaintiff.

### 3. MERS Satisfies the Requirements of Federal Rule 23

The PSLRA requires that the movant with the largest financial interest must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  "In an action under the PSLRA, a moving lead plaintiff need only make a preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23."  *Clark v. Barrick Gold Corp.*, No. 13 CIV 3851(RPP), 2013 WL 5300698, at *2 (S.D.N.Y. Sept. 20, 2013) (citation and internal quotation marks omitted).

#### a) MERS' Claims Are Typical of the Class

The typicality requirement is satisfied "where the proposed lead plaintiff's 'claims and injuries arise from the same conduct from which the other class members' claims and injuries arise.'"  *Marcsh v. Rui Feng*, No. 12 Civ. 9456(JSR), 2013 WL 3204193, at *2 (S.D.N.Y. June 13, 2013) (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998)).

MERS' claims are typical of those of the class because like all other class members, MERS: (1) purchased or otherwise acquired MiMedx securities during the Class Period; (2) at allegedly artificially inflated prices caused by Defendants' materially false and misleading

---

[2] FIFO and LIFO are the two principal accepted methods for calculating approximate losses for purposes of appointing a lead plaintiff under the PSLRA.  Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward (hence, "first in, first out").  Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward (hence, "last in, first out").

6

statements and/or omissions; and (3) suffered damages when the truth about MiMedx was revealed. *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings, Ltd.*, No. 11 Civ. 5097(JFK), 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011) (finding the typicality requirement is "easily met" when proposed lead plaintiff's claims are based on allegations that it purchased the company's securities during the class period and was injured by defendants' false and misleading representations). Accordingly, MERS is a typical class representative.

      b)    MERS Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

  The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." For class members' interests to be fairly and adequately represented, the lead plaintiff must "not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *6 (S.D.N.Y. May 31, 2012) (citation and internal quotation marks omitted).

  MERS manages retirement and employee benefit plans for more than 850 municipal members across the state of Michigan with a combined net position value of more than $10.1 billion.[3] MERS serves over 100,000 participants, including police officers and firefighters, road

---

[3] *See* Comprehensive Annual Financial Report for the Municipal Employees' Retirement of Michigan (fiscal year ending Dec. 31, 2016), at 5, https://employerportal.mersofmich.com/SharePointFormsService/Default.aspx?Publication=CAFR_2016.pdf.

crews, medical staff, librarians, clerks and countless other roles that protect and serve the many communities across Michigan.[4]

MERS' interests are perfectly aligned with the other members of the class and are not antagonistic in any way. Indeed, MERS has the same interest as all members of the class: to maximize the recovery from the Defendants. There are no facts that indicate any conflicts of interest between MERS and the other class members. Moreover, because of MERS' substantial financial stake in the litigation, class members can be assured that it has the incentive to vigorously represent their interests. *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171(RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting institutional investor's "substantial financial stake in the litigation" suggests that it would vigorously prosecute claims on behalf of the class).

MERS has submitted a Certification declaring its commitment to protect the interests of the class. *See* Lavallee Decl., Ex. B. Further, there is no evidence of antagonism or conflict between MERS and the class. MERS' significant losses demonstrate that it has sufficient interest in the outcome of the case. Additionally, as explained below, MERS' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Therefore, MERS meets the adequacy requirement of Rule 23.

Finally, as a sophisticated, institutional investor with a demonstrated significant financial interest in the relief sought, MERS is precisely the type of lead plaintiff that Congress intended to lead securities class actions when it enacted the PSLRA in 1995. *See Plymouth Cty. Ret. Sys. v. Carter's Inc.*, No. 1:08-cv-2940-JOF, 2009 WL 692141, at *1 (N.D. Ga. Mar. 13, 2009) (noting that the "PSLRA, as a whole, favors institutional investors with large amounts at stake"); *In re*

---

[4] *Id.*

*Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (emphasizing that the legislative intent behind the PSLRA was to encourage large institutional investors to serve as lead plaintiff).

For the foregoing reasons, MERS should be appointed Lead Plaintiff for the class.

### B.  MERS' SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court.  15 U.S.C. §78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d at 276 (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class."  *See* H.R. Rep. No. 104-369, at 35, *as reprinted in* 1995 U.S.C.C.A.N. at 734 ; *In re Herley Inds., Inc. Sec. Litig.*, No. 06-2596, 2010 WL 176869, at *5 (E.D. Pa. Jan. 15, 2010) ("Unless a lead plaintiff's selection of counsel would fail to protect the interest of the class, a court should not interfere with the selection process.").

Here, MERS has selected Berman Tabacco as Lead Counsel.  Berman Tabacco is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume.  *See* Lavallee Decl., Ex. D.  The firm has been ranked as a "Top Ten Plaintiffs' Firm" by *Benchmark Litigation*.  Berman Tabacco is one of the country's premier class action law firms with over 30 years of experience prosecuting securities litigation cases.  Since the passage of the PSLRA, Berman Tabacco has held leadership positions in more than 100 federal securities class actions, recovering billions of dollars on behalf of defrauded investors, including: *In re BP PLC Sec. Litig.*, No. 10-md-2185 (S.D. Tex.) (as co-lead counsel for the Ohio Public employees retirement system, the firm reached a $175 million settlement); *In*

*re IndyMac Mortgage-Backed Sec. Litig.*, No. 09-cv-04583-LAK (S.D.N.Y.) (representing the Wyoming State Treasurer and the Wyoming Retirement System and reaching settlements worth $346 million); *In re 2008 Fannie Mae Sec. Litig.*, No. 08-civ-07831-PAC (S.D.N.Y) (representing the Massachusetts Pension Reserves Investment Management Board and achieving a $170 million settlement).

As a result of Berman Tabacco's extensive experience in litigation involving issues similar to those raised in this action, MERS' counsel has the skill and knowledge necessary to enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving MERS' selection of Lead Counsel, the members of the class will receive the best legal representation available.

//

//

//

## IV. CONCLUSION

For all of the foregoing reasons, MERS respectfully requests that the Court: (1) appoint MERS to serve as Lead Plaintiff in this action; and (2) approve MERS' selection of Berman Tabacco as Lead Counsel.

DATED: April 25, 2018           **BERMAN TABACCO**

          */s/ Patrick T. Egan*
          Patrick T. Egan (PE-6812)
          Jay Eng
          One Liberty Square
          Boston, Massachusetts 02109
          Telephone: (617) 542-8300
          Facsimile: (617) 542-1194
          Email: pegan@bermantabacco.com
                 jeng@bermantabacco.com

          Nicole Lavallee
          Chowning Poppler
          44 Montgomery Street, Suite 650
          San Francisco, CA 94104
          Telephone: (415) 433-3200
          Facsimile: (415) 433-6382
          Email: nlavallee@bermantabacco.com
                 cpoppler@bermantabacco.com

          *Counsel for Movant Municipal Employees'*
          *Retirement System of Michigan and Proposed Lead*
          *Counsel for the Class*